IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-CV-00680-RBJ

DEREK J. WEBB,

      Plaintiff,

v.

ACES UP GAMING, INC.,
CHARLES RAWLS DRENNAN, III,
TODD TAYLOR, and
DOES 1-10,

      Defendants.

---

## DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM

---

COMES NOW Defendants Aces Up Gaming, Inc. ("Aces Up"), Charles Rawls Drennan, III ("Mr. Drennan"), and Todd Taylor ("Mr. Taylor") (collectively, "Defendants"), by and through counsel Treece Alfrey Musat P.C., and for this Answer to Plaintiff's First Amended Complaint and Counterclaim state as follows:

### JURISDICTION

1.      The allegations set forth in Paragraph 1 are jurisdictional in nature, and, therefore, no response is required. To the extent a response is required, Defendants deny the allegations for the reasons stated in their Motion to Dismiss Amended Complaint and Jury for Lack of Diversity Jurisdiction ("Motion," Docket No. 15).

2.      Defendants are without sufficient information so as to form a belief as to the truth of the allegations set forth in Paragraph 2.

3.      Defendants admit the allegations set forth in Paragraph 3.

4.      Defendants admit the allegations set forth in Paragraph 4.

5.      Defendants admit the allegations set forth in Paragraph 5.

6.      Defendants admit the allegations set forth in Paragraph 6.

7.      The allegations set forth in Paragraph 7 are jurisdictional in nature, and, therefore, no response is required.  To the extent a response is required, Defendants deny the allegations for the reasons stated in their Motion.

8.      The allegations set forth in Paragraph 8 are jurisdictional in nature, and, therefore, no response is required.  To the extent a response is required, Defendants deny the allegations for the reasons stated in their Motion.

9.      The allegations set forth in Paragraph 9 are jurisdictional in nature, and, therefore, no response is required.  To the extent a response is required, Defendants deny the allegations for the reasons stated in their Motion.

10.     The allegations set forth in Paragraph 10 are jurisdictional in nature, and, therefore, no response is required.  To the extent a response is required, Defendants deny the allegations for the reasons stated in their Motion.

11.     Defendants admit the allegations set forth in Paragraph 11.

12.     The allegations set forth in Paragraph 12 are jurisdictional in nature, and, therefore, no response is required.

13.     The allegations set forth in Paragraph 13 are jurisdictional in nature, and, therefore, no response is required.

14.     The allegations set forth in Paragraph  are jurisdictional in nature, and, therefore, no response is required.

15.     Defendants are without sufficient information so as to form a belief as to the allegations in Paragraph 15.

## VENUE

16.     The allegations set forth in Paragraph 9 are jurisdictional in nature, and, therefore, no response is required.  To the extent a response is required, Defendants deny the allegations for the reasons stated in their Motion.

## FACTUAL ALLEGATIONS

*This Lawsuit Arises from the Resolution of a Prior Lawsuit*[1]

17.     Defendants admit the allegations set forth in Paragraph 17.

18.     Defendants admit the allegations set forth Paragraph 18.

19.     Defendants admit the allegations set forth in Paragraph 19.

20.     Defendants admit the allegations set forth in Paragraph 20.

21.     With respect to the allegations set forth in Paragraph 21, Defendants admit that the Scientific Games Defendants were large companies with greater economic resources than the plaintiffs in that action, and are without sufficient information to admit or deny the remaining allegations.

---

[1] Defendants include these subheadings that mirror those in the First Amended Complaint for purposes of clarity and consistency in this Answer only.  Because these subheadings do not constitute discrete allegations, Defendants do not respond to them.

22.     With respect to the allegations set forth in Paragraph 22, Defendants admit that Mr. Cranford was an independent contractor for Aces Up, and are without sufficient information to admit or deny the remaining allegations.

23.     Defendants are without sufficient information so as to form a belief as to the truth of the compound allegations set forth in Paragraph 23.

24.     Upon information and belief, Defendants admit the allegations set forth in Paragraph 24.

25.     Defendants deny the allegations as they are set forth in Paragraph 25.

26.     With respect to the allegations set forth in Paragraph 26, any document referenced states what it states.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

***The Parties Agree in Advance in Writing How to Divide Any Shuffle Tech Lawsuit Recovery***

27.     With respect to the allegations set forth in Paragraph 27, any document referenced states what it states.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

28.     Defendants deny the allegations as they are set forth in Paragraph 28.

29.     Defendants deny the allegations set forth in Paragraph 29.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

30.     Defendants admit the allegations as they are set forth in Paragraph 30. Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

31.     Defendants deny the allegations set forth in Paragraph 31.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

32.     The allegations set forth in Paragraph 32 refer to the interpretation of a contract, and any document referenced states what it states.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

33.     The allegations set forth in Paragraph 33 refer to the interpretation of a contract, and any document referenced states what it states.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

34.     Defendants admit the allegations set forth in Paragraph 34.

### A Dispute Developed Between Mr. Cranford and Defendants

35.     Defendants admit the allegations set forth in Paragraph 35.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

36.     Defendants admit the allegations set forth in Paragraph 36.

37.     Defendants deny the allegations as they are set forth in Paragraph 37.  Defendants aver that Mr. Cranford participated in aspects of the Shuffle Tech Lawsuit, including giving a deposition in which his testimony was deemed as lacking credibility by the lawyers and, therefore, not usable for prosecution of the case.

38.     Defendants admit the allegations set forth in Paragraph 38.

39.     Defendants deny the allegations set forth in Paragraph 39.

40.     Defendants deny the compound allegations set forth in Paragraph 40.  Defendants admit, however, that Mr. Cranford's independent contractor arrangement with Aces Up eventually ended for reasons other than those described in Paragraph 40.

41.     Defendants deny the allegations set forth in Paragraph 41.

42.     Defendants deny the allegations set forth in Paragraph 42.

43.     Defendants deny the allegations set forth in Paragraph 43.

**Defendants engage in Self-Dealing and Bad Faith**

44.     Defendants deny the allegations set forth in Paragraph 44.

45.     Defendants deny the allegations set forth in Paragraph 45.

46.     Defendants deny the allegations set forth in Paragraph 46.

47.     Defendants deny that they offered to sell Aces Up to the Scientific Games Defendants.  The remaining allegations involve the interpretation of a contract, and any document referenced states what it states.

48.     Defendants deny the allegations set forth in Paragraph 48.

49.     Defendants deny the allegations set forth in Paragraph 49.

**The Shuffle Tech Lawsuit Resulted in a Remarkable Verdict**

50.     Defendants admit the allegations set forth in Paragraph 50.

51.     Defendants deny the allegations set forth in Paragraph 51.

52.     Defendants deny the allegations set forth in Paragraph 52.

53.     Defendants deny the allegations set forth in Paragraph 53.

54.     Defendants deny the allegations set forth in Paragraph 54.

55.     Defendants deny the allegations set forth in Paragraph 55.

56.     Defendants deny the allegations set forth in Paragraph 56.

57.     Defendants deny the allegations set forth in Paragraph 57.

58.     Defendants deny the allegations set forth in Paragraph 58.

59.     Defendants deny the allegations set forth in Paragraph 59.

60.     Defendants admit the allegations set forth in Paragraph 60.

61.     Defendants admit that Aces Up was entitled $3,90,609.51 as a result of the Shuffle Tech Lawsuit settlement.  Defendants deny the remaining allegations set forth in Paragraph 61.

62.     Defendants deny the allegations set forth Paragraph 62.

63.     Defendants admit the allegations set forth in Paragraph 63.

64.     Defendants deny the allegations set forth in Paragraph 64.

65.     Defendants admit the allegations set forth in Paragraph 65 insofar as no amount of Aces Up's allocation of settlement funds were paid to Mr. Cranford on that date.

**Mr. Cranford Assigned His Rights in the Aces Up Recovery to Plaintiff**

66.     Defendants deny the allegations set forth in Paragraph 66.

67.     Defendants deny the allegations set forth in Paragraph 67.

68.     Defendants deny the allegations set forth in Paragraph 68 except that they are without sufficient information so as to form a belief as to the truth of the allegations involving Mr. Cranford's financial condition.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

69.     Defendants deny the allegations set forth in Paragraph 69.

70.     Defendants are without sufficient information so as to form a belief as to the truth of the allegations set forth in Paragraph 70.

71.     Defendants are without sufficient information so as to form a belief as to the truth of the allegations set forth in Paragraph 70.

72.     Defendants are without sufficient information so as to form a belief as to the truth of the allegations set forth in Paragraph 72.

73.     Defendants are without sufficient information so as to form a belief as to the truth of the allegations set forth in Paragraph 73.

74.     Defendants are without sufficient information to form a belief as to the truth allegations set forth in Paragraph 74.

75.     Defendants deny the allegations set forth in Paragraph 75 insofar as Defendants and Mr. Cranford reached an oral agreement separate from, but evidenced by, the Financing Agreement.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

76.     Defendants are without sufficient information so as to form a belief as to the allegations set forth in Paragraph 76.  Defendants deny the allegations set forth in Paragraph 76 insofar as Defendants and Mr. Cranford reached an oral agreement separate from, but evidenced by, the Financing Agreement.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.

77.     Defendants are without sufficient information so as to form a belief as to the allegations set forth in Paragraph 77, but expressly deny that Defendants "inflict[ed]" any financial strain on Mr. Cranford.  Per the allegations, Mr. Cranford did that to himself prior to resolution of the Shuffle Tech Lawsuit.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

78.     Defendants are without sufficient information so as to form a belief as to the allegations set forth in Paragraph 78.  Defendants deny the allegations set forth in Paragraph 78 insofar as Defendants and Mr. Cranford reached an oral agreement separate from, but evidenced by, the Financing Agreement.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

79.     Defendants are without sufficient information so as to form a belief as to the allegations set forth in Paragraph 79.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

80.     Defendants are without sufficient information so as to form a belief as to the allegations set forth in Paragraph 80.

81.     Defendants deny the allegations set forth in Paragraph 81 to the extent that no "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

82.     Defendants deny the allegations set forth in Paragraph 82 to the extent that no "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

83.     Defendants deny the allegations set forth in Paragraph 83, deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

84.     In response to the allegations contained in Paragraph 84, Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford—through Plaintiff at Mr. Cranford's direction—was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

85.     In response to the allegations contained in Paragraph 85, Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford—through Plaintiff at Mr. Cranford's direction—was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

86.     Defendants deny the allegations set forth in Paragraph 86, deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

87.     Defendants deny the allegations set forth in Paragraph 87.

88.     Upon information and belief, Defendants admit that Mr. Cranford now denies any oral agreement preceding the Financing Agreement.  Defendants further deny that their obligations to Mr. Cranford ever arose from the Financing Agreement itself, to which Mr. Cranford was never a party.

89.    Defendants admit that they have not agreed to Plaintiff's and Mr. Cranford's demand to pay $1,171,420.15, but deny the remainder of the allegations in Paragraph 89. Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

90.    Defendants admit the allegations set forth in Paragraph 90.

91.    Defendants admit the allegations set forth in Paragraph 91 to the extent that the referenced amount was distributed by the Shuffle Tech Lawsuit attorneys to a trust account.

92.    Defendants deny the allegations as they are set forth in Paragraph 92.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract—Defendant Aces Up)

93.    Defendants incorporate their above responses by reference.

94.    Defendants deny the compound allegations set forth in Paragraph 94.

95.    The allegations set forth in Paragraph 95 involve legal conclusions to which no response is required.  To the extent a response is required, they are denied.

96.    Defendants deny the allegations in Paragraph 96 and aver that Mr. Cranford had no obligations pursuant to the Financing Agreement and was not a party thereto.

97.    Defendants deny the allegations set forth in Paragraph 97.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

98.     Defendants deny the allegations set forth in Paragraph 98.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

99.     Defendants deny the allegations set forth in Paragraph 99 that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford. Defendants further aver that Mr. Cranford is not now, and was not then, a party to the referenced contract, and as such there is no breach occasioned on him by which anything other than the American Rule applies regarding attorney's fees as damages.

## SECOND CLAIM FOR RELIEF

### (Breach of the Implied Covenant of Good Faith and Fair Dealing—Defendant Aces Up)

100.    Defendant incorporates its above responses by reference.

101.    The allegations set forth in Paragraph 101 involve legal conclusions to which no response is required.

102.    The allegations set forth in Paragraph 102 involve legal conclusions to which no response is required.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract, and as such no duty arose by and among Mr. Cranford and Defendants.

103.    Defendants deny the compound allegations set forth in Paragraph 103 and its subparts *in toto*.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract, and as such no duty arose by and among Mr. Cranford and Defendants.

104.    Defendants deny the allegations set forth in Paragraph 104.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract, and as such no duty arose by and among Mr. Cranford and Defendants.

105.    Defendants deny the allegations set forth in Paragraph 105.  Defendants aver that Mr. Cranford is not now, and was not then, a party to the referenced contract, and as such no duty arose by and among Mr. Cranford and Defendants.  As such, Plaintiff has no rights of enforcement with respect to any claim by Mr. Cranford.

106.    Defendants deny the allegations set forth in Paragraph 106.  Defendants further aver that Mr. Cranford is not now, and was not then, a party to the referenced contract, and as such there is no breach occasioned on him by which anything other than the American Rule applies regarding attorney's fees as damages.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty—Defendants Drennan and Taylor)

107.    Defendants incorporate their above responses by reference.

108.    To the extent Plaintiff means to describe Mr. Drennan and Mr. Taylor as third-party beneficiaries, the allegations set forth in Paragraph 109 involve legal conclusions to which no response is required.

109.    Defendants deny the allegations set forth in Paragraph 109 to the extent that Mr. Cranford and Defendants reached an oral agreement, which preceded the Financing Agreement, whereby Mr. Cranford would be entitled to a decreasing percentage distribution from any initial allocation of a settlement to Aces Up as the Shuffle Tech Lawsuit progressed.

110.    Defendants are without sufficient information so as to form a belief as to the truth of the allegations set forth in Paragraph 110.

111.    To the extent Plaintiff alleges that a fiduciary relationship existed for a certain period of time, the allegations set forth in Paragraph 111 involve legal conclusions to which no response is required.

112.    The allegations set forth in Paragraph 112 involve legal conclusions to which no response is required. Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

113.    Defendants deny the allegations set forth in Paragraph 113. Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

114.    Defendants deny the allegations set forth in Paragraph 114.

115.    Defendants deny the allegations set forth in Paragraph 115. Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

116.    Defendants deny the allegations set forth in Paragraph 116. Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

117.    Defendants deny the allegations set forth in Paragraph 117.

## FOURTH CLAIM FOR RELIEF

### (Unjust Enrichment—All Defendants)

118.    Defendants incorporate their above responses by reference.

119.    Defendants deny they are liable for unjust enrichment and that Plaintiff is entitled to plead a claim for Unjust Enrichment when he has pleaded a claim for Breach of Contract.

120.    Defendants deny the allegations set forth in Paragraph 120.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.

121.    Defendants deny the allegations set forth in Paragraph 121.

122.    Defendants deny the allegations set forth in Paragraph 122.  Defendants deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and aver that Mr. Cranford was fully compensated pursuant to the oral agreement among Defendant Aces Up and Mr. Cranford.  Defendants further aver that the balance of funds subject to this dispute are held in trust and have not been disbursed to Defendants.

123.    Defendants deny the allegations set forth in Paragraph 123.

124.    Defendants deny the allegations set forth in Paragraph 124, and state that alleging Mr. Cranford has standing to be compensated by virtue of this lawsuit contradicts the nature of the assignment alleged in Paragraphs 66-80.

## FIFTH CLAIM FOR RELIEF

### (Conversion—All Defendants)

125.    Defendants incorporate their above responses by reference.

126.    Defendants deny the allegations set forth in Paragraph 126, deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and deny that the document referenced contains any timing provision for disputed disbursements to non-parties.

127.    Defendants deny the allegations set forth in Paragraph 127 deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and deny that the document referenced contains any timing provision for disputed disbursements to non-parties.

128.    Defendants deny the allegations set forth in Paragraph 128, deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and deny that the document referenced contains any timing provision for disputed disbursements to non-parties.

129.    Defendants deny the allegations set forth in Paragraph 129, deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, and deny that the document referenced contains any timing provision for disputed disbursements to non-parties. Defendants aver that the balance of funds subject to this dispute are held in trust and have not been disbursed to Defendants.

130.    Defendants deny the allegations set forth in Paragraph 130, and deny that any "Cranford Lawsuit Distribution" exists under the referenced contract.

131.    Defendants deny that Mr. Cranford and/or Plaintiff are entitled to a "balance" of any distribution, and deny that any "Cranford Lawsuit Distribution" exists under the referenced contract, but admit that Plaintiff has demanded additional funds.

132.    Defendants deny the allegations set forth in Paragraph 132.

## AFFIRMATIVE DEFENSES

1.    Plaintiff has failed to state a claim upon which relief can be granted.

2.    Defendants have fully performed their duties under the oral agreement, as modified, among Defendants and Mr. Cranford/Plaintiff.

3.    Plaintiff's claims may be barred or limited by the terms of the oral agreement, as modified, among Defendants and Mr. Cranford/Plaintiff.

4.    Any debt claimed by Plaintiff was discharged by satisfaction on an accord.

5.    Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of estoppel, waiver, and/or laches.

6.    Plaintiff's claims are frivolous, groundless, and without substantial justification, entitling Defendants to costs, expenses, and attorney fees.

## COUNTERCLAIMS

COMES NOW, and Counterclaim-Plaintiff Aces Up (as previously defined), through counsel, Treece Alfrey Musat, PC, and for their Counterclaim against Plaintiff state as follows:

## PARTIES, VENUE, AND JURISDICTION

1.    Counterclaim Plaintiff Aces Up Gaming, Inc. ("Aces Up"), is a Colorado corporation with its principle place of business located at 5855 W. 38th Avenue, Wheat Ridge, Colorado 80212.

2.    Tony A. Cranford ("Cranford") is an individual who resides at 15955 Ridge Tee Drive, Morrison, Colorado 80465.  Counterclaim Defendant Derek Webb, by virtue of the

assignment alleged in Paragraphs 66-80 of the First Amended Complaint and Jury Demand (Docket no. 13), stands in the shoes of Mr. Webb for the purpose of this counterclaim.

3.      While Counterclaim Plaintiff Aces Up disputes that jurisdiction is appropriate in this venue (*see* Mot., Docket no. 15), the counterclaim is compulsory and is asserted as required by the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

4.      Aces Up was a party-plaintiff in a lawsuit styled *Shuffle Tech International LLC et al. v. Scientific Games Corporation et al.*, United States District Court, Northern District of Illinois, Case No. 1:15-CV-03702 (described in this Counterclaim as the "Shuffle Tech Litigation").

5.      The Shuffle Tech Litigation prosecuted antitrust claims against those defendants related to their sham patent litigation concerning gaming products rightfully owned by the party-plaintiffs.

6.      In light of the multiple parties and other interests in the Shuffle Tech Litigation, Aces Up and the other plaintiffs, as well as the law firm prosecuting the case for them and a private party who staked litigation costs, entered into a contract called the "Litigation Financing Agreement" on March 16, 2015.

7.      The parties to the Litigation Financing Agreement were, in total, plaintiff Shuffle Tech International, LLC; Plaintiff/Counterclaim Defendant and Hannah O'Donnell (the financing partners); Nixon & Vanderhyde, P.C. (litigation counsel); plaintiff Poydras-Talrick Holdings, LLC; and plaintiff Aces Up.

8.      The Litigation Financing Agreement specified how allocations of proceeds of the litigation, whether by judgment or settlement, would be paid out to the contracting parties, including the financing partners and Aces Up.

9.      Aces Up's share of proceeds was specifically based on its proportionate share of lost profits damage caused by the Shuffle Tech Litigation defendants' bad acts.  No other corporation or individual other than Aces Up itself suffered its proportionate share of damages.

10.     The Litigation Financing Agreement also specified that the party-plaintiffs' recovery percentage would diminish over time based on when a recovery was achieved in the litigation.  That progressive system was both contingent on a recovery even being had (as a defense verdict or a $0 damages verdict were possibilities), and then in the event of a recovery the party-plaintiffs' recovery interests would be reduces based on a phase-of-case system, with the party-plaintiffs being designated a higher percentage of the aggregate recovery in the event of settlement in Phase 1 (defined as the pre-suit, initial pleadings, and scheduling conference phase), with a progressively lower designated percentage of recovery in the aggregate to the party-plaintiffs in the event of a recovery in Phase 6 (trial, post-trial, and appeal).

11.     The percentage allocation system reflected an intent that the party-plaintiffs' interests in recovery would diminish over time as the financing parties' outlay increased.  As such, the longer the case went on, the less the named party stakeholders stood to receive.

12.     Within the allocation to Aces Up, certain amounts were contemplated to be either allocated or designated for individuals Mr. Drennan; Mr. Taylor; and Mr. Cranford.

13.     As consideration toward those allocations and designations, each of the individuals would offer their past and future efforts to further the goal of successfully

prosecuting the Shuffle Tech Litigation, and/or be entitled to a portion of any proceeds as a result of ownership of Aces Up.

14.    At the time of the Litigation Financing Agreement, only Mr. Drennan and Mr. Taylor had an ownership stake in Aces Up.

15.    Aces Up agreed, however, to offer Mr. Cranford the purely contingent consideration of a portion of Aces Up's potential recovery in exchange for his non-monetary contributions of some level of case liaising and initial networking to receive an allocated portion of Aces Up's phase-based recovery, if any.  Absent effort toward the litigation, Mr. Cranford had no right or title to any interest in Aces Up's recovery and, in the event of a defense verdict, stood to gain nothing as consideration—just as Aces Up stood to gain nothing if the lawsuit was unsuccessful.

16.    At the outset of Aces Up's engagement in the Litigation Financing Agreement, it was understood by Aces Up and Mr. Cranford that Mr. Cranford's value proposition in participating in the Shuffle Tech Litigation would diminish over time, just as Aces Up's own value proposition diminished over time by virtue of the phased allocation percentages.  That is, if the Shuffle Tech Litigation resolved early in suit, the allocation of proceeds would be nearly double than a verdict allocation, involvement of Aces Up and its principals would be less onerous, and Mr. Cranford's early participation would have greater value.

17.    On the other hand, if the litigation was protracted, Mr. Cranford's role would diminish as Aces Up's obligations increased, thereby placing a greater burden on Aces Up and entitling it to a progressively higher percentage of any recovery, and Mr. Cranford to a lesser percentage as his role diminished.  In addition, because Aces Up's own allocation interest would

decrease substantially the longer the litigation went due to the phased Litigation Financing Agreement, everyone stood to gain less consideration the longer the case took.

18.     At the time of the Financing Agreement—which it did not draft—Aces Up contemplated "designating" at the top end 56% of Aces Up's own potential recovery to Mr. Cranford, but did not commit that designated percentage as either to be paid or as an irrevocable interest.

19.     In fact, the language of the Litigation Financing Agreement was distinct as to the owners' share—which was to be "paid" to Mr. Drennan and Mr. Taylor—and the potential Mr. Cranford amount, which was to be "designated" by the company as a percentage though not as a sum certain, reflecting the intent to address amendments of allocation to Mr. Cranford in the future.

20.     In light of the contingent and diminishing nature of any potential recovery by Aces Up, it verbally negotiated with Mr. Cranford similar phased percentages for his potential consideration recovery Mr. Cranford in the contingent event of a judgment or settlement to which Aces Up would be entitled to a recovery.

21.     The orally negotiated contract contemplated a percentage payout to Mr. Cranford similar to the phased percentages contemplated in the Litigation Financing Agreement, where the payout percentage would decrease over time if the Shuffle Tech Litigation took longer to resolve. Mr. Cranford's potential Phase 1 designation would be the top end 56% "designation" of Aces Up's potential recovery, and that designation would reduce over phases to a final 26% in the event of litigation resolution in Phase 6.

22.    No persons or entity other than Aces Up and Mr. Cranford were parties to the oral contract, and there were no intended third-party beneficiaries of the oral contract at the time it was negotiated.

23.    As the Shuffle Tech Litigation passed through the contemplated Phases, Mr. Cranford's role in support of his designation interest did in fact diminish, as did the recovery percentage potential for Aces Up through the phases.

24.    The Shuffle Tech Litigation resolved in Phase 6 as defined by the Litigation Financing Agreement, and therefore the percentages orally agreed upon to be accounted for out of Aces Up's recovery were as follows: 26% paid to Cranford, the 22% paid to Drennan and the 22% paid to Taylor would remain unchanged, and Aces Up would retain 30% of any recovery of its own damages.

25.    The oral agreement represented an offer by Aces Up to Mr. Cranford, which was accepted by him as consideration in light of actual and necessary effort contributed toward the prosecution of Aces Up's claims in the Shuffle Tech Litigation with a higher contingent recovery value in Phase 1, and a lower contingent recovery value in Phase 6.

26.    After protracted litigation, the Shuffle Tech Litigation plaintiffs, including Aces Up, were awarded by a jury a total amount of $315,000,000 against those defendants.

27.    Subsequent to the verdict, the parties negotiated what constituted a Phase 6 settlement under the Litigation Financing Agreement, thus also representing a Phase 6 allocation per the oral contract between Aces Up and Mr. Cranford.

28.     The Shuffle Tech Litigation defendants caused the gross settlement to be paid to the plaintiffs' litigation counsel in trust in December 2018 for subsequent distribution according to the Litigation Financing Agreement.

29.     After deductions from the gross amount for litigation costs and other obligations considered in the Litigation Funding Agreement, a sum total of $3,901,609.51 was paid to Aces Up from the remaining Shuffle Tech Litigation settlement proceeds.

30.     Under the oral contract, Aces Up caused to be paid his Phase 6 share of that amount, $1,013,481.18, to Mr. Cranford as beneficiary by wire on or about December 31, 2018.

31.     Under the oral contract, Aces Up also caused to be paid to Drennan and Taylor their respective 22% allocations of the Shuffle Tech Litigation settlement proceeds.

32.     The remaining 30% of the Aces Up Shuffle Tech Litigation settlement proceeds are and have always been on deposit in a COLTAF account, where they remain today.

33.     In the course of final reconciliation of the Shuffle Tech Litigation settlement proceeds pursuant to the Litigation Financing Agreement, Defendant Cranford disputed the prior and valid oral agreement he reached with Aces Up concerning his payable share of the Phase 6 recovery by Aces Up.

34.     While an oral offer, acceptance, and consideration for Mr. Cranford's ultimate 26% share of the Aces Up settlement allocation were made and valid, and while that amount was paid out, an actual or potential dispute exists as to the 30% remainder of the settlement proceeds held in trust on behalf of Aces Up.

35.     Mr. Cranford assigned his alleged interest in that 30% remainder of the settlement proceeds to Plaintiff/Counterclaim Defendant Derek Webb.  Accordingly, Plaintiff/Counterclaim

Defendant stands in Mr. Cranford's stead in any claim regarding entitlement to the 30% remainder of the settlement proceeds.

36.    Counterclaim Defendant, as assignee of Mr. Cranford, may also be referred to hereafter as "Mr. Cranford."

## CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant to FED. R. CIV. P. 57 and 28 U.S.C. § 2201)**

37.    Plaintiff incorporates its above allegations herein by reference.

38.    Pursuant to FED. R. CIV. P. 57 and 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration."

39.    An actual dispute exists by and among Aces Up and Counterclaim Defendant regarding the existence and enforceability of an oral contract by and among them as to a claim for a portion of Aces Up's settlement proceeds from the Shuffle Tech Litigation.

40.    The Court's granting of declaratory judgment with respect to the rights and obligations of the oral contract would terminate the controversy or remove an uncertainty, thereby being a proper exercise of this Court's powers under state law.

41.    Pursuant to Fed. R. Civ. P. 57 and 28 U.S.C. § 2201(a), this Court should issue judgment declaring:

      a.    That a valid oral contract exists by and among Plaintiff and Mr. Cranford, to which both were parties;

b.  That the terms of the oral contract granted Mr. Cranford a contractual right to $1,013,481.18 of Aces Up's settlement proceeds from the Shuffle Tech Litigation;

c.  That Aces Up performed under that oral contract on or about December 31, 2018; and

d.  That Aces Up has no further contractual obligation to pay any additional amounts to Mr. Cranford/Counterclaim Defendant out of the remaining settlement proceeds from the Shuffle Tech Litigation.

WHEREFORE, Defendant Aces Up, Inc., prays the Court enter the above-mentioned judgment as requested above, and award Aces Up its costs, attorney fees, expert witness fees, and other relief the Court deems just and proper.

Respectfully submitted this 26th day of July, 2019.

s/ Robert J. Zavaglia, Jr.
Robert J. Zavaglia, Jr.
J. Brooks Fortune
TREECE ALFREY MUSAT P.C.
633 17th Street, Suite 2200
Denver, CO 80202
(303) 292-2700
Fax: (303) 295-0414
Email: zavaglia@tamlegal.com;
bfortune@tamlegal.com
*Attorneys for Defendants Aces Up Gaming, Inc.,*
*Charles Rawls Drennan, III, and Todd Taylor*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of July, 2019, I electronically filed the foregoing **DEFENDANTS' ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND COUNTERCLAIM** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following counsel of record to their CM/ECF-registered email addresses:

Darren J. Lemieux
dlemieux@lrrc.com
Abby C. Harder
aharder@lrrc.com
*Attorneys for Plaintiff*

s/ Victoria Reimche
Victoria Reimche